UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTOR ORTEGA, | : | 3:13-CV-00860 |
| Plaintiff | : | (Judge Caputo) |
| v. | : | (Magistrate Judge Schwab) |
| UNITED STATES OF AMERICA, *et al.,* | : | |
| Defendants | : | |

# REPORT AND RECOMMENDATION

## I. Introduction.

The plaintiff, Victor Ortega, claims that the conditions he was subjected to in the Special Housing Unit of the Schuylkill Federal Correctional Institution caused him great pain and aggravated his preexisting back condition. Although he pleaded claims under both the Federal Tort Claims Act (FTCA) and *Bivens*, he now concedes that he failed to exhaust available administrative remedies as to his *Bivens* claims. So we recommend that the *Bivens* claims be dismissed. As to the FTCA claim, the only proper defendant in the United States, so we recommend that the other defendants be dismissed. Also, because there is a genuine factual dispute about the conditions to which Ortega was subjected, we recommend that the United States' motion for summary judgment as to the FTCA claim be denied.

## II. Background and Procedural History.

Ortega, proceeding *pro se*, began this action by filing a complaint naming as defendants the United States and following six individuals employed or working at the Schuylkill Federal Correctional Institution (Schuylkill): Warden Hufford, Associate Warden Castaneda, Lieutenant Brandt, Dr. Webb, Physician's Assistant Boyer, and Unknown Captain of Security. His claims arise from his confinement in the Special Housing Unit (SHU) at Schuylkill.

Ortega alleges that the SHU at Schuylkill is overcrowded such that four inmates are frequently placed in 10 foot by 12 foot "day cells" without bunks and are required to sleep on the floor. He alleges that, from July 3, 2011 to January 3, 2012, he was housed in the SHU in such a cell without a proper mattress or bedding. According to Ortega, he was required to rest and sleep on a substandard one-inch mat-like floor pad. He alleges that he has a compressed spinal disc, poor lower-body circulation, severe sciatica, and acute neuropathy, and the conditions in the cell caused him pain and aggravated his medical problems.

Ortega alleges that he complained to the Warden, Associate Warden, and other staff about the conditions, and he requested to be reassigned to cell with a bunk and a mattress. He also alleges that he requested additional bedding from the

medical staff.  According to Ortega, after his repeated verbal requests were denied, he requested administrative remedy complaint forms, which requests were also denied.  Ortega alleges that he was then told to stop complaining or he would not be afforded his daily one-hour recreation period, and thereafter he was denied his recreation period.  When he complained about the purported retaliation against him, he alleges that he was told that the conditions to which he was subjected were typical and to be expected in the SHU.

  The complaint contains seven counts.  Count One is a claim under the Federal Tort Claim Act against the United States and the individual defendants in their official capacities.  He claims that the defendants "failed to maintain and implement mandatory and non-discretionary Prison Building codes, Codes of Federal Regulation, [and] SHU Post Directives" requiring "basic cell furnishings such as bunks, mattresses and bedding in SHU-Cells when being used as long-termed confinement cells." *Doc. 1* at ¶56.  He further claims that the defendants violated "mandatory occupancy codes" by using the cells for long term confinement of prisoners without providing proper mattresses and bedding and that he has been irreparably harmed by his "negligent SHU confinement." *Id.* at ¶57.  He also claims that because of his confinement in the SHU he now walks with a cane

and suffers constant back and sciatic pain. *Id.*   Counts two through seven of the complaint are *Bivens* claims against the individual defendants.

On August 21, 2013, defendants the United States, Hufford, Castaneda, and Brandt[1] filed a motion to dismiss and for summary judgment.   The moving defendants later filed a brief in support of their motion, a statement of material facts, and supporting documents.   Ortega responded by the filing a motion to withdraw his *Bivens* claims because he failed to exhaust administrative remedies with regard to those claims.   He also filed a brief in opposition to the motion to dismiss and for summary judgment as to the FTCA claim, and he filed a response to the defendants' statement of material facts and supporting documents.   The defendants later filed a reply brief.

**III. Discussion.**

Because Ortega conceded that he failed to exhaust administrative remedies as to his *Bivens* claims, we will recommend that those claims be dismissed.   As to the FTCA claim, the only proper defendant is the United States, so we will recommend that the FTCA claim against the individual defendants be dismissed.   Finally,

---

1 The other defendants—Webb, Boyer, and Unnamed Captain of Security—have not been served with the complaint.

4

because the United States relies on documents outside the pleadings in arguing that the FTCA claim should be dismissed, we will analyze the FTCA claim under summary judgment standards. Because there is a genuine factual dispute about the conditions to which Ortega was subjected in the SHU, we recommend that the United States not be granted summary judgment on the FTCA claim.

    A. **Summary Judgment Standard.**

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011)(quoting Fed.R.Civ.P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986).  With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed.R.Civ.P. 56(c).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.  Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the

material facts. *Id.* at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248-49. When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011)(quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can

be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

### B. The United States is the Only Proper Defendant as to the Federal Tort Claims Act Claim.

"The FTCA 'was designed primarily to remove the sovereign immunity of the United States from suits in tort and, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances." *Sosa v. Alvarez-Machain,* 542 U.S. 692, 700 (2004)(quoting *Richards v. United States*, 369 U.S. 1, 6 (1962)).  Federal district courts have jurisdiction over civil actions against the United States for damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstance where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."   28 U.S.C. § 1346(b).   The only proper defendant with respect to an FTCA claim is the United States. *See* 28 U.S.C. § 2679; *Feaster v. Fed. Bureau of Prisons*, 366 F. App'x 322, 323 (3d Cir. 2010)("The only proper defendant in an FTCA suit is the United States itself.").   Due to the exclusive nature

8

of the remedy available under the FTCA, and its jurisdictional prerequisites, a court may not entertain a civil suit for a claim cognizable under 28 U.S.C. § 1346(b) against "any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1).

Because the United States is the only proper defendant with respect to Ortega's FTCA claim, the FTCA claim against the defendants other than the United States should be dismissed.

### C. The United States Is Not Entitled to Summary Judgment Because There Is a Genuine Factual Dispute About the Conditions to Which Ortega Was Subjected.

The FTCA provides, in relevant part, that the "United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.  A person may sue under the FTCA to recover damages from the United States for personal injuries sustained during confinement in a federal prison by reason of the negligence of a government employee. *United States v. Muniz*, 374 U.S. 150 (1963).

In an FTCA action, the Court applies the law of the state where the alleged tortious conduct occurred. 28 U.S.C. § 1346(b).  In this case, because Ortega is

complaining about acts and omissions that occurred at the Schuylkill Federal Correctional Institution, which is in Pennsylvania, we apply the law of Pennsylvania. "In Pennsylvania, a plaintiff in a negligence action must demonstrate: (1) that the defendants owed him a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual injury." *Fiore v. Holt*, 435 F. App'x 63, 66 (3d Cir. 2011). Despite application of the law of the state where the tortious act occurred, it has been recognized that the United States' duty of care to a federal prisoner is that of ordinary diligence. *Id.* (citing 18 U.S.C. § 4042).

The United States does not dispute that it owed a duty to exercise reasonable care and diligence. It argues, however, that the facts in this case do not rise to the level of negligence, and, in that regard, it contends that Ortega's allegations that he was injured due to the conditions in his cell are without merit. It contends that, contrary to Ortega's allegations, Ortega was provided with a standard mattress and bedding approved by the American Correctional Association while housed in the SHU, and Ortega was not housed in a bunkless cell for the entire duration of his SHU confinement but only when the number of inmates assigned to the SHU

exceeded the bunk capacity, thereby requiring three, rather than two, inmates to a cell.

In response, Ortega presented evidence, in the form of his own declaration and declarations from three other inmates, supporting his allegations. Ortega's declaration and the declarations of the other inmates provide that, from July 3, 2011 to January 3, 2012, Ortega was confined in the SHU in a cell without bunks, a table, or chairs. *Doc. 31* at 10 (Decl. of Victor Ortega at ¶¶1-2); *Doc. 31* at 4 (Decl. of Oshea Ward at ¶¶1-2); *Doc. 31* at 7 (Decl. of Regelio Ortega at ¶¶1-2); and *Doc. 31* at 17 (Decl. of Jorge R. Canuelas at ¶¶1-2). According to Ortega and the other inmates, the cell, which was approximately 10 feet by 12 feet, was completely empty except for a single combination toilet and sink. *Doc. 31* at 10 (Decl. of Victor Ortega at ¶¶2-3); *Doc. 31* at 4 (Decl. of Oshea Ward at ¶¶2-3); *Doc. 31* at 7 (Decl. of Regelio Ortega at ¶¶2-3); and *Doc. 31* at 17 (Decl. of Jorge R. Canuelas at ¶¶2-3). Ortega and the other inmates assert that four inmates were housed regularly in the cell for 24 hours a day and that they were required to sleep, rest, and sit on one-inch floor mats, which the SHU staff referred to as mattresses. *Doc. 31* at 10 (Decl. of Victor Ortega at ¶3); *Doc. 31* at 4 (Decl. of Oshea Ward at ¶3); *Doc. 31* at 7 (Decl. of Regelio Ortega at ¶3); and *Doc. 31* at 17 (Decl. of Jorge R. Canuelas at ¶3). Ortega

11

states in his declaration that he suffered from severe back pain because he was required to sleep, rest, and sit on the floor mat when confined in the extremely tight cell with the other inmates. *Doc. 31* at 10 (Decl. of Victor Ortega at ¶4). He also states that he addressed his concerns with staff without obtaining meaningful relief, and his request for an additional floor mat to help him cope with his increasing pain was denied. *Id.* at ¶5. Ortega and the other inmates also assert that they were subject to extreme temperatures in the cell: freezing temperatures in the winter months and temperatures exceeding 100 degrees in the summer months. *Doc. 31* at 11 (Decl. of Victor Ortega at ¶6); *Doc. 31* at 4 (Decl. of Oshea Ward at ¶6); *Doc. 31* at 7 (Decl. of Regelio Ortega at ¶6); and *Doc. 31* at 17 (Decl. of Jorge R. Canuelas at ¶6). Ortega further states that he was denied one-hour exercise periods on a regular basis and that he was also denied shower access. *Doc. 31* at 12 (Decl. of Victor Ortega at ¶14). He states, and the other inmates corroborate, that because of the overcrowding he had to sleep directly next to the toilet, which at times resulted in the other inmates accidently urinating on him. *Doc. 31* at 11 (Decl. of Victor Ortega at ¶9); *Doc. 31* at 5 (Decl. of Oshea Ward at ¶9); *Doc. 31* at 8 (Decl. of Regelio Ortega at ¶9); and *Doc. 31* at 18 (Decl. of Jorge R. Canuelas at ¶9). According to Ortega, because of his extreme pain, the lack of breathable air, and his emotional distress he

remained in a constant state of disorientation. *Doc. 31* at 11 (Decl. of Victor Ortega at ¶10). He states that every three weeks he was cycled between two bunkless cells, one on the upper floor of the SHU and one on the lower floor of the SHU. *Id.* at 12 (Decl. of Victor Ortega at ¶16). Ortega also sets forth in his declaration the numerous complaints that he made about the conditions in the SHU. *Id.* at 13-15 (Decl. of Victor Ortega at ¶¶17-23).

    In its reply brief, the United States contends that Ortega has not presented competent evidence that he suffered any injury as a result of the conditions in the SHU. On the contrary, Ortega's declaration, in which he states that suffered severe back pain because of the conditions, is competent evidence. In its reply brief, the United States also raises a new argument: i.e., that Ortega has not presented evidence that operation standards, codes, or policies were violated by his confinement in the SHU. But as that issue was not raised in the United States' opening brief, Ortega was not on notice that that was an issue, and, thus, that is not a proper basis for summary judgment, at least at this time on this record.

    The declarations of Ortega and the other inmates create a genuine factual dispute about the conditions in the SHU. That dispute is material to the FTCA claim. Accordingly, the United States is not entitled to summary judgment.

## IV. Recommendations.

Accordingly, for the foregoing reasons, it is recommended that Ortega's motion (doc. 33) to withdraw his *Bivens* claims be granted, and that the defendants' motion (doc. 21) to dismiss and for summary judgment be granted in part and denied in part.  It is recommended that the *Bivens* claims and the FTCA claims against all the defendants except the United States be dismissed, but it is recommended that the United States not be granted summary judgment on the FTCA claim.  Finally, it is recommended that the case be remanded to the undersigned for further proceedings.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own

determination on the basis of that record.   The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 17th day of January, 2014.

                                  ***S/Susan E. Schwab***
                                  Susan E. Schwab
                                  United States Magistrate Judge